IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SPRINGFIELD

| | |
|---|---|
| MICHAEL AMICK AND SARA AMICK, | ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) Case No. 6:17-CV-03391-BP |
| OREGON COUNTY, et al. | ) ) |
| Defendants. | ) ) |

**PLAINTIFFS' SUGGESTIONS IN OPPOSITION TO DEFENDANTS' ADDITIONAL
SUMMARY JUDGMENT BRIEF TO THE COURT**

Plaintiffs Michael and Sara Amick submit the following suggestions in opposition to Defendants' Additional Summary Judgment Brief to the Court.

**<u>Introduction</u>**

The Court correctly held at the summary judgment stage that Plaintiffs have a viable Fourteenth Amendment claim against Tim Ward for allegedly fabricating evidence that was used to secure Mr. Amick's conviction. Dkt. 229 at 15, 38-39.

Defendants now seek reconsideration of that decision, arguing that the Court erred by analyzing the claim that Ward fabricated evidence that was used to deprive Mr. Amick of liberty under the Fourteenth Amendment rather than the Fourth Amendment, despite the fact that both parties analyzed the claim under the Fourteenth Amendment. Defendants also assert that Ward is entitled to absolute immunity because he testified about the allegedly fabricated evidence during Mr. Amick's criminal proceedings. Not so.

Defendants are wrong as a matter of law that a fabrication claim in a case involving a wrongful conviction must be analyzed under the Fourth Amendment if the alleged fabrication begins before trial, and their belated attempt to make that argument exceeds the scope of the permitted briefing. Dkt. 247 at 2-3. They certainly have not met the high burden of showing that the Court should reconsider its summary judgment ruling that analyzed the claim under the Fourteenth Amendment. Defendants' argument that Ward is entitled to absolute immunity from suit under § 1983 because he testified about his alleged fabrication, the one argument on which the Court permitted additional briefing, fares no better because Plaintiffs do not seek to hold Ward liable for his false testimony. Rather, they seek to hold him liable for fabricating evidence well before the trials, and witnesses do not immunize earlier wrongful conduct by testifying about that conduct at trial.

Defendants also seek to relitigate the viability of the remaining state-law claims, but that effort fails for two reasons. First, the Court did not permit that briefing. Second, Defendants fail to show that Missouri recognizes absolute witness immunity to the same degree that the federal courts recognize that privilege, and more importantly, Plaintiffs do not seek to hold Ward liable for his allegedly false testimony. And with respect to the Intentional Infliction of Emotional Distress claim, the Court was right to deny summary judgment because no other available state-law tort covers the same conduct.

## Argument

Defendants ask the Court to reconsider its ruling denying in part their motions for summary judgment. "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Satterlee v. I.R.S.*, 05-3181-CV-S-FJG, 2007 WL 1267305, at *1 (W.D. Mo. Feb. 20, 2007). Such motions "cannot be used to raise arguments which could have been raised prior to the issuance of judgment." *See Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988). Defendants cannot satisfy this high standard.

### I. The Court should not consider Defendants' argument that all pre-trial activity related to the fabrication claim arises under the Fourth Amendment.

Defendants argue that all pre-trial conduct at issue in this case must "be governed by the Fourth Amendment analysis for probable cause, not the substantive due process analysis under the Fourteenth Amendment," and that Defendant Tim Ward is entitled to judgment as a matter of law under that standard because "the record establishes sufficient facts/evidence for a finding of probable cause even without Ward's supposedly false statement and thus no violation of Michael Amick's Fourth Amendment rights occurred." Dkt. 245 at 5. Defendants' argument relies exclusively on the Supreme Court's decision in *Manuel v. City of Joliet*, which was decided in 2017. *See* Dkt. 243 at 4-5, citing *Manuel*, 137 S. Ct. 911 (2017).

2

As an initial matter, the Court should strike this argument because it exceeds the scope of additional briefing that the Court authorized, as more fully explained in Plaintiffs' motion to strike and supporting memorandum. *See* Dkt. 247. But even if the Court is not inclined to strike Defendants' argument, the Court should still refuse to consider the argument because Defendants could have raised it earlier but chose not to do so. Indeed, Defendants took the opposite position at summary judgment, asserting that the claim arose under the Fourteenth Amendment. *See* Dkt. 186 at 14 (Individual Defendants' Suggestions In Support of Summary Judgment, analyzing Ward's alleged fabrication under Fourteenth Amendment); Dkt. 207 at 190-202 (Defendants' Reply in Support of Summary Judgment, analyzing fabrication claim under Fourteenth Amendment). Parties may not use motions to make arguments that they could have made earlier, and so the Court should reject Defendants' new argument that Mr. Amick has only a Fourth Amendment claim for "any pre-trial fabrication of evidence or false testimony by Ward." *See*, *e.g.*, *Hagerman*, 839 F.2d at 414.

## II. Mr. Amick's fabrication claim was properly analyzed under the Fourteenth Amendment.

In the Eighth Circuit, and elsewhere, a § 1983 claim based on the alleged fabrication of evidence that is used to deprive a plaintiff of his or her liberty arises under the Due Process clause of the Fourteenth Amendment. *E.g.*, *Winslow v. Smith*, 696 F.3d 716, 734–35 (8th Cir. 2012) ("because there is evidence Defendants used false evidence to secure a conviction, Plaintiffs have sufficiently supported a cognizable due process claim"); *see also Livers v. Schenck*, 700 F.3d 340, 351 (8th Cir. 2012) ("manufacturing false evidence may shock the conscience and can violate the Fourteenth Amendment's due process clause").

*Winslow* and *Livers* are still good law, and Defendants cite no cases suggesting otherwise. Instead, Defendants seem to suggest that the Supreme Court implicitly overruled those cases in *Manuel* such that fabrication claims must be analyzed under the Fourth Amendment until trial, and

3

then claims based on trial conduct must be dismissed based on absolute immunity. Defendants are wrong.

As this Court properly recognized in its summary judgment opinion, plaintiffs in § 1983 cases alleging that they were wrongfully convicted have distinct claims under the Fourth and Fourteenth Amendments. And those claims protect distinct (though related) constitutional rights. In short, the Fourth Amendment protects individuals from being wrongfully detained without probable cause. *Lewis v. City of Chicago*, 914 F.3d 472, 474 (7th Cir. 2019). By contrast, a Fourteenth Amendment "claim is grounded in the due process guarantee of fundamental fairness in criminal prosecutions." *Avery v. City of Milwaukee*, 847 F.3d 433, 441 (7th Cir. 2017). Such a claim "has long been recognized." *Id.*

*Lewis*, which was decided after *Avery*, recognized the critical distinction between the protections offered by the Fourth and Fourteenth Amendments when it explained "that a claim for wrongful pretrial detention based on fabricated evidence is distinct from a claim for wrongful *conviction* based on fabricated evidence: [C]*onvictions* premised on deliberately fabricated evidence will always violate the defendant's right to due process." *Lewis*, 914 F.3d at 479 (emphasis in original) (internal quotation marks omitted); *see also Taylor v. City of Chicago*, 14 C 737, 2019 WL 4597383, at *15 (N.D. Ill. Sept. 23, 2019) (in wrongful conviction case, separately analyzing Fourth Amendment claim and Fourteenth Amendment fabrication claim).[1]

*Manuel* does not stand for the proposition that as long as some probable cause existed, Defendants may fabricate evidence at will, use that fabricated evidence to help secure a conviction, and then be immune from suit. *Manuel* involved a plaintiff who alleged that he was wrongfully charged for a crime that he did not commit, but who was neither tried nor convicted for that crime.

---

[1] Plaintiffs maintain that there is also a viable Fourth Amendment claim and a broader Fourteenth Amendment claim than the Court allowed, but they recognize that the Court partially ruled against them on these issues.

*Manuel*, 137 S. Ct. at 915-17. The Supreme Court in *Manuel* decided whether the Seventh Circuit was correct to say that s plaintiff who alleged he was prosecuted without probable cause, but who was not convicted, had *no* viable § 1983 claim. *Id.* at 916-918. The Supreme Court rejected the Seventh Circuit's view that Manuel was required to turn to state-law in that circumstance, recognizing that ten other circuits had also rejected that view, and holding that Manuel could pursue a Fourth Amendment claim. *Id.* at 916-917. Unlike Mr. Amick, Manuel was neither tried nor convicted, as the prosecution voluntarily dismissed the charges before trial. *Id.*

    *Manuel* stands for the proposition that civil rights plaintiffs do not lose the protection of the Fourth Amendment merely because they are ultimately subjected to legal proceedings. *Id.* at 919-920. Because Mr. Amick was convicted at trial, *Manuel* does not dictate that "any pre-trial fabrication of evidence or false testimony by Ward against Michael Amick would be governed by the Fourth Amendment analysis for probable cause, not the substantive due process analysis under the Fourteenth Amendment." Dkt. 243 at 5. Indeed, *Manuel* expressly acknowledges that individuals challenging wrongful *convictions* based on fabricated evidence may do so under the Fourteenth Amendment's due process claim. *Manuel*, 137 S. Ct. 920 n. 8 ("A person challenging the sufficiency of the evidence to support both a conviction and any ensuing incarceration does so under the Due Process Clause of the Fourteenth Amendment."). And as noted above, the Seventh Circuit also addressed this in some detail and reached the same result in *Lewis*, which was decided after *Manuel*.

    Along the same lines, the Supreme Court itself recently decided when the statute of limitations should begin to run in fabrication cases brought under the Fourteenth Amendment, which decidedly undercuts Defendants' new assertion that *Manuel* got rid of such claims. *McDonough v. Smith*, 139 S. Ct. 2149 (2019). Although the Supreme Court did not make an express determination that there is a free-standing Fourteenth Amendment claim in § 1983, the fact that the Supreme Court assumed there was such a claim and then decided when that claim accrued is a strong

5

indication that its decision in *Manuel* did not implicitly overturn the years of case-law consistent with such a view. *See Mayo v. LaSalle County*, 18 CV 01342, 2019 WL 3202809, at *3 (N.D. Ill. July 15, 2019) (explaining that *McDonough* "assumed without deciding that the framing of the claim as implicating the Due Process Clause was appropriate," which "seems to cast some doubt on the Seventh Circuit's view that *Manuel I* foreclosed grounding a claim of pretrial restriction of liberty based on the use of fabricated evidence on the Due Process Clause in addition to the Fourth Amendment").

This view is consistent with the Eighth Circuit's recent approach in *Johnson v. McCarver*, 18-1148, -- F.3d --, 2019 WL 5656242, at *4 (8th Cir. Nov. 1, 2019), where the court explained that a § 1983 plaintiff who was *acquitted* at trial had a Fourth Amendment claim rather than a Fourteenth Amendment claim, while also confirming that *Winslow* is still good law in cases where fabricated evidence is used to secure a *conviction* and thus leads to post-trial deprivation of liberty. *See id.* ("The jury acquitted Johnson, and he suffered no deprivation of liberty after the trial. Accordingly, there is insufficient evidence to support a finding that the officers violated Johnson's rights under the Due Process Clause."). As *Johnson* shows, differentiating between pre-trial and post-trial time periods separates plaintiffs who were convicted from plaintiffs who were not convicted. It does not mean that law enforcement officials who fabricate evidence before trial may not be held resonsible under the Fourteenth Amendment when the fabrication helps secure a wrongful conviction, and it certainly does not grant immunity to defendants who fabricated evidence and then complete the due process violation by testifying about the fabricated evidence at trial. To the contrary, a Fourteenth Amendment claim *requires* that the fabricated evidence be used to deprive plaintiff "of liberty in some way," and the most common way that occurs is through the introduction of the fabrication at trial. *See id.*; *see also, e.g., Whitlock v. Brueggemann*, 682 F.3d 567, 582 (7th Cir. 2012) (alleged violation of

6

Case 6:17-cv-03391-BP   Document 252   Filed 11/19/19   Page 7 of 12

the Fourteenth Amendment was not complete until trial, when false testimony was used to deprive plaintiff of fair trial).

Under Defendants' view, law enforcement officials would be free to use fabricated evidence to secure criminal convictions, while avoiding liability, so long as some modicum of probable cause supported the criminal proceedings. That is not the law, and no case suggests otherwise. Rather, plaintiffs such as Mr. Amick who are convicted with the assistance of allegedly fabricated evidence may pursue fabrication clims under the Fourteenth Amendment. *See id.*; *see also Lewis*, 914 F.3d at 479 (convictions based on fabrication of evidence violate due process right to fair trial, in contrast to cases that do not involve convictions).[2]

### III. Ward is not entitled to summary judgment on absolute immunity grounds.

Regardless of what substantive law applies to Mr. Amick's fabrication claim, Defendant Ward is not entitled to absolute immunity because Plaintiffs do not seek to hold him liable for providing false testimony. Instead, as the Court has already held, a jury could find Ward liable for allegedly creating a report in which he falsely claimed to have seen a torch in Mr. Amick's truck the day before recovering a cut-up gun at the Amick property. Dkt. 229 at 39-30. Ward's subsequent testimony in a manner consistent with his report is relevant to show that Mr. Amick's right to a fair trial was violated (and that the fabrication was used to deprive Mr. Amick of his liberty in some way), but Ward's testimony did not give him retroactive absolute immunity for fabricating a report in the first place. As the Seventh Circuit aptly explained:

> If an officer who fabricates evidence can immunize himself from liability by authenticating falsified documentary or physical evidence and then repeating

---

[2] Consistent with this view, other district courts in this Circuit have continued to analyze fabrication claims under the Fourteenth Amendment. *See Morgan v. Nikolov*, 4:18-CV-01799-AGF, 2019 WL 5597094, at *4 (E.D. Mo. Oct. 30, 2019) (differentiating between Fourth Amendment claim for prosecution without probable cause and substantive due process claim based on fabricated evidence, and refusing to dismiss fabrication claim); *see also Rinne v. Hosick*, 4:18CV3037, 2019 WL 3766103, at *3 (D. Neb. Aug. 8, 2019) (noting that Eighth Circuit analyzes fabrication claims under the Fourteenth Amendment and allowing amended complaint to pursue a fabrication claim).

7

Case 6:17-cv-03391-BP   Document 252   Filed 11/19/19   Page 8 of 12

the false "facts" in his trial testimony, wrongful-conviction claims premised
on evidence fabrication would be a dead letter.

*Avery*, 847 F.3d at 441; *see also Whitlock*, 682 F.3d at 582 (that "alleged constitutional violation here was not complete until trial" when false testimony was used to deprive plaintiff of fair trial did not mean that defendant was entitled to immunity for creating the fabricated evidence in the first place). *Cf. McGhee v. Pottawattamie County, Iowa*, 547 F.3d 922, 932 (8th Cir. 2008) (holding that prosecutors who procure false testimony or fabricated evidence are liable for constitutional violations, and rejecting argument that the only constitutional violation occurs when the evidence is used at trial, a time at which the prosecutors have absolute immunity); *Buckley v. Fitzsimmons*, 20 F.3d 789, 796 (7th Cir. 1994) ("constitutional wrongs completed out of court are actionable even if they lead to immunized acts").

Plaintiffs read the Court's summary judgment decision to be in line with the cases cited above and the general case law regarding absolute immunity. Plaintiffs did not understand the Court's summary judgment ruling to allow a jury to hold Defendant Ward liable *for* his allegedly false testimony. To the contrary, Plaintiffs read the Court's summary judgment ruling as correctly allowing a jury to hold Ward liable for fabricating evidence well before the criminal trials, and as acknowledging that Ward's false testimony regarding the allegedly fabricated evidence is relevant to show that Mr. Amick's right to a fair trial was violated.

**IV. The Court should not grant summary judgment on the remaining state-law claims.**

As explained in Plaintiffs' motion to strike, Defendants devote multiple pages of their brief to arguing for the dismissal of Plaintiffs' remaining state law claims, which exceeds the scope of permissible briefing on the single topic of absolute witness immunity. Dkt. 243 at 8-10. Here, Defendants argue that Missouri recognizes some form of witness immunity (though they do not claim that it is absolute) and then attempt to reargue the merits of Mr. Amick's state-law claims for

8

malicious prosecution and intentional infliction of emotional distress. Dkt. 243 at 8-10. If the Court does not strike these arguments, Defendants still lose on the merits.

With respect to witness immunity, Defendants acknowledge that Missouri offers a more limited form of immunity than the type of absolute immunity available in § 1983 cases. Dkt. 243 at 8-9. "In Missouri, this immunity generally has been restricted to defamation, defamation-type, or retaliatory cases against adverse witnesses." *Murphy v. A.A. Mathews, a Div. of CRS Group Engineers, Inc.*, 841 S.W.2d 671, 680 (Mo. 1992). *Murphy*, the case upon which Defendants rely, is dispositive. In that case, a party claimed witness immunity for pretrial actions taken in the lead up to a trial. *See id.* The Missouri Supreme Court rejected that claim and contrasted pretrial actions with the type of trial testimony for which there is absolute immunity in § 1983 cases. *Id.* at 680-81. Given that Missouri's law regarding witness immunity is more limited than federal law and the fact that Plaintiffs do not seek to hold Ward liable for his trial testimony, he is not entitled to absolute immunity for Plaintiffs' state-law claims.

As for Mr. Amick's claim for the intentional infliction of emotional distress, the Court properly declined to grant summary judgment on the ground that it does not appear there is any other traditional tort that covers the specific conduct at issue. Dkt. 229 at 43. Defendants have not identified any reason to suggest the Court erred in so ruling. To the contrary, they continue to argue that Mr. Amick has no other valid state-law claims. Dkt. 243 at 9-10.

Finally, Defendants are also wrong when they assert that, for a valid intentional infliction of emotional distress claim, "the alleged conduct must have been 'intended **only** to cause extreme emotional distress to the victim.'" Dkt. 243 at 9, quoting *K.G. v. R.T.R.*, 918 S.W.2d 795, 799 (Mo. en banc. 1996). In *K.G.*, the Missouri Supreme Court was making a different point – "that where one's conduct amounts to the commission of one of the traditional torts, such as battery, and the conduct was not intended only to cause extreme emotional distress to the victim, the tort of

9

intentional emotional distress will not lie." *K.G.*, 918 S.W.2d at 799. Put differently, the Missouri Supreme Court held that a claim for intentional infliction of emotional distress would fail if both of the following are true: (1) the alleged conduct satisfies the elements of a traditional common law tort; *and* (2) the alleged conduct was carried out for purposes other than inflicting distress. *K.G.* did not hold that plaintiffs alleging intentional infliction of emotional distress claim must allege that the conduct was intended solely to cause emotional distress. In any event, in this case, Defendants themselves argue that no other tort covers Ward's conduct, and a reasonable jury could find that Ward fabricated evidence solely to inflict distress on Mr. Amick.

In short, Defendants have not offered any reason to suggest that the Court erred when it denied summary judgment with respect to Mr. Amick's intentional infliction of emotional distress claim, let alone erred in such a way that warrants reconsideration. That is particularly true given that Defendants could have, but did not, make these arguments before the Court ruled. *See*, *e.g.*, *Hagerman.*, 839 F.2d at 414. The Court should decline Defendants' request to reconsider its ruling denying summary judgment on this claim.

## Conclusion

For the reasons stated above and in Plaintiffs' motion to strike, the Court should strike all of Defendants' arguments other than the direct question of whether Ward is absolutely immune from suit under § 1983 because he testified during Mr. Amick's criminal proceedings. On that issue, Ward is not immune because Plaintiffs do not seek to hold him liable for his testimony. If the Court addresses the merits of any arguments advanced by Defendants, those arguments also fail.

Respectfully submitted by:

| /s/ Scott Rauscher<br>Arthur Loevy (Admitted *pro hac vice*)<br>Jon Loevy (Admitted *pro hac vice*)<br>Scott Rauscher (Admitted *pro hac vice*)<br>Josh Loevy<br>LOEVY & LOEVY | /s/Christopher J. Lawler<br>Christopher J. Lawler, Mo. Bar# 52802<br>Erika E. Lawler, Mo. Bar# 56213<br>4510 Belleview Avenue, Suite 202<br>Kansas City, Missouri 64111<br>(T) 816-912-4700 / (F) 866-567-9151 |

10

| | |
|---|---|
| 311 N. Aberdeen St., 3rd floor, Chicago, IL 60607<br>(312) 243-5900<br>*Attorneys for Michael Amick* | (chris@lawlerfirmllc.com)<br>*Attorneys for Sara Amick* |

## CERTIFICATE OF SERVICE

     I, Scott Rauscher, hereby certify that I caused a true and correct copy of the foregoing to be filed by ECF on November 19, 2019, which caused the foregoing to be served on all counsel of record.

                                        /s/ Scott Rauscher
                                        Scott Rauscher