IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL AMICK, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) No. 17-3391-CV-S-BP |
| OREGON COUNTY, MISSOURI, *et al.*, | ) |
| Defendants. | ) |

### ORDER AND OPINION (1) DENYING PLAINTIFFS' MOTION TO STRIKE AND (2) GRANTING SUMMARY JUDGMENT ON ALL REMAINING CLAIMS

This is a civil rights case, asserting that Defendants violated Plaintiff Michael Amick's constitutional rights and committed torts in connection with an investigation into an arson and murder. The Court previously dismissed Defendants Kass Brazeal and Michael Johnson. (Doc. 123.)[1] On October 8, 2019, the Court granted summary judgment on most of the remaining claims. (Doc. 229.) Thereafter, the remaining Defendants – Tim Ward and Oregon County, Missouri – sought and obtained leave to submit supplemental briefing to address whether summary judgment should be granted on the claims that survived the Court's summary judgment order. (Doc. 239.) Plaintiffs filed a Motion to Strike, arguing that portions of the Defendants' supplemental briefing exceeded the scope of the Court's Order.

The supplemental briefing is now complete. Plaintiffs' Motion to Strike is also fully briefed. After considering the parties' arguments, (1) Plaintiffs' Motion to Strike, (Doc. 246), is **DENIED** and (2) based on the supplemental briefs, summary judgment is **GRANTED** in favor of Ward and Oregon County on the remaining claims.

---

[1] All page numbers are those generated by the Court's CM/ECF system.

## I. BACKGROUND

The Court's October 8, 2019 summary judgment order discussed the background to this case in significant detail and the reader is directed to that Order for a more complete recitation. Here, the Court will summarize only those facts necessary to resolve the parties' arguments.

Plaintiff Michael Amick[2] was charged with murder and arson in connection with the murder of his wife's grandmother, Leona Vaughan. He was convicted of second degree murder and second degree arson, but the Missouri Supreme Court ordered that he be retried. Michael was acquitted at the second trial. After the acquittal, he and his wife (Sara) filed this suit against several of the individuals involved in the investigation (as well as Oregon County and the City of Alton). In their Second Amended Complaint, (Doc. 94), they asserted the following claims:

**Count I**  A claim under 42 U.S.C. § 1983 asserting that Defendants fabricated evidence, conducted a reckless investigation, arrested Michael despite lacking probable cause, and pursued judicial proceedings against Michael despite knowing that Michael was innocent.

**Count II**  A claim under 42 U.S.C. § 1983 asserting that Defendants conspired to deprive Michael of his constitutional rights.

**Count III**  A claim against Oregon County, asserting that it is liable for the individual Defendants' constitutional violations pursuant to *Monell v. Department of Social Servs.,* 436 U.S. 658 (1978).

**Counts IV-IX**  Claims against the individual defendants under state law for intentional infliction of emotional distress, malicious prosecution, civil conspiracy, false arrest, abuse of process, and loss of consortium, respectively.

---

[2] To avoid confusion, the Court will refer to Michael and his wife, Sara, by their first names.

Plaintiffs dismissed some Defendants, (Doc. 82; Doc. 83), and as stated earlier the Court dismissed Brazeal and Johnson. The Court later granted Defendants summary judgment on all remaining claims, except for the claims based on Plaintiffs' theory that Tim Ward falsely testified at trial that he saw a cutting torch in Michael's truck. As the Court explained, "[t]he jury could disbelieve Ward's testimony, credit Michael's testimony, and conclude that there was no torch in Michael's truck and that Ward lied when he said that he saw one. The Court is not holding that Ward fabricated his statement; the Court merely holds that a jury could find that he did." (Doc. 229, p. 30.) Ward's trial testimony was important in light of other evidence establishing that the day after Ward allegedly saw a torch in Michael's truck, Ward and other law enforcement officers found a burned spot on Plaintiffs' property, and in that burned spot was discovered melted pieces from a gun. More melted gun pieces were found in a pond by that location. The Court explained that because Ward testified about the torch at Michael's criminal trial, a jury in this case

> could conclude that Ward falsely claimed to have seen a torch in order to reinforce the connection between Michael and the burned spot by the pond and the melted gun pieces. If the jury believes that this is what happened, then it could find that Michael's constitutional rights were violated. And, the constitutional prohibition on fabricating evidence to implicate a defendant (or to bolster the prosecution of a defendant) was clearly established in December 2008.

(Doc. 229, p. 30.) The Court relied on this same reasoning to deny summary judgment on Michael's clams against Ward for intentional infliction of emotional distress and malicious prosecution. (Doc. 229, pp. 41-43.) The Court further held that Oregon County could be liable for Ward's unconstitutional conduct because he was a decisionmaker for the County so his actions might be found to be a policy. (Doc. 229, pp. 39-41.) And, the Court denied summary judgment on Sara's claim to the extent that it denied summary judgment on Michael's claim.

3

Critically, the Court did *not* credit Plaintiffs' theory that Ward's false statement contributed to Michael's arrest or the filing of charges. To the contrary, the Court specifically rejected this theory (as it had in prior orders):

> Plaintiffs also point out Ward's statement about seeing a torch was included in [Deputy Sheriff Eric] King's probable cause statement, which was utilized to support an arrest warrant for Michael. (Doc. 202, p. 98-99). However, the other facts contained in the probable cause statement – including particularly Mayberry's observation, Michael's financial motive, and the discovery of the gun pieces on Plaintiffs' property – established probable cause. (Doc. 202-59.)

(Doc. 229, p. 31 n.21.)

It was not an accident that the Court relied on Ward's testimony about the torch at trial – and not the role the torch played in any other aspect of the process – as the basis for denying summary judgment. As indicated, the Court had previously (and consistently) held that the statement about the torch could not have caused Michael's arrest or the filing of charges because there was abundant other evidence supporting probable cause. On the other hand, the parties had alluded to the role the torch played at trial without directly addressing the issue – which prompted the Court to direct the parties to supplement the Record so that it could evaluate the matter. (Doc. 219.) In contrast to the torch's role with respect to Michael's arrest and the filing of charges, the Court held that Ward's trial testimony about the torch could have led to Michael's conviction at the first trial. (Doc. 229, p. 30.) The Court relied on similar reasoning to support its decision with respect to the tort claims that survived summary judgment.

But, while the parties alluded to Ward's trial testimony they did not discuss it in much detail. And, it was the Court that solicited the addition of Ward's trial testimony into the Record. Under these circumstances, and with the issue now highlighted by the Court's ruling, the Court deemed it proper to grant Defendants' request "to file a brief addressing their argument that

4

Case 6:17-cv-03391-BP   Document 255   Filed 01/14/20   Page 4 of 12

witnesses in criminal proceedings are absolutely immune from § 1983 claims based on their testimony." (Doc. 239.)

In the supplemental briefing, Ward argues that as a matter of law his testimony at trial cannot give rise to liability under § 1983 or Missouri's tort law. Oregon County argues that it cannot be liable if Ward cannot be liable. Plaintiffs argue that they are not seeking to impose liability based on Ward's testimony.[3] The Court resolves these issues below.

## II. DISCUSSION

A moving party is entitled to summary judgment on a claim only upon a showing that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *See generally Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986). However, not all undisputed facts will justify summary judgment; as Rule 56(a) suggests, only undisputed *material* facts can do so. "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conversely, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted).

In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be *reasonably* drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984), *cert. denied*, 470 U.S. 1057 (1985).

---

[3] Plaintiffs also contend that some of Ward's and Oregon County's arguments exceed the permitted scope of the briefing and should be rejected. The Court rejects Plaintiffs' technical analysis and concludes that the issues raised by Ward and Oregon County are interrelated, so the Motion to Strike, (Doc. 246), is denied.

5

"The nonmoving party is entitled to all reasonable inferences that may be drawn from the evidence but not to inferences that may only be drawn by resorting to speculation." *Williams v. City of Carl Junction, MO,* 480 F.3d 871, 873 (8th Cir. 2007) (cleaned up); *see also Hill v. Southwestern Energy Co.,* 858 F.3d 481, 487 (8th Cir. 2017).

### A. Plaintiffs' Federal Claims

As stated earlier, Michael's federal claim was allowed to proceed on a theory that Ward's false testimony *at trial* caused Michael to be convicted (and incarcerated thereafter until he was acquitted in 2017). Ward correctly argues, however, that a person's testimony at trial cannot give rise to a constitutional claim. In *Briscoe v. LaHue,* 460 U.S. 325 (1983), the Supreme Court held that witnesses in criminal prosecutions enjoy absolute immunity from claims under § 1983, even if the § 1983 claim is predicated on a theory that the witness provided perjured testimony. *Briscoe,* 460 U.S. at 333-34. The Court was "urge[d] [to] carve out an exception to the general rule of immunity in cases of alleged perjury by police officer witnesses." *Id.* at 341. The Court declined to create such an exception, explaining that "our cases clearly indicate that immunity analysis rests on functional categories, not on the status of the defendant." *Id.* at 342. Since then, courts have repeatedly characterized *Briscoe* as holding that witnesses – including police officers – are absolutely immune from constitutional claims based on their testimony, even if that testimony is allegedly perjured. *E.g., Holmes v. Slay,* 895 F.3d 993, 999 n.7 (8th Cir. 2018) ("[T]he officers had absolute immunity from liability based on the testimony they gave in their official capacities at the 2003 criminal trial, so the truthfulness (or untruthfulness) of the officers' prior testimony was not at issue." (citing *Briscoe*)); *see also Burns v. Reed,* 500 U.S. 478, 489 (1991); *Cleavinger v. Saxner,* 474 U.S. 193, 200 (1985); *Helmig v. Fowler,* 828 F.3d 755, 761 (8th Cir. 2016); *Thomason v. SCAN Volunteer Services, Inc.,* 85 F.3d 1365, 1373 (8th Cir. 1996); *Davis v. City of Charleston, MO,* 827 F.2d 317, 322 (8th Cir. 1987).

6

The Supreme Court extended the immunity recognized in *Briscoe* to testimony before a grand jury, holding "that grand jury witnesses should enjoy the same immunity as witnesses at trial." *Rehberg v. Paulk,* 566 U.S. 356, 369 (2012). In so doing, the Court further discussed the contours of the immunity and characterized *Briscoe* as establishing that a "witness has absolute immunity with respect to *any* claim based on the witness' testimony." *Rehberg,* 566 U.S. at 367; *see also id.* at 369. The immunity cannot "be circumvented by claiming that a . . . witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim . . . ." *Id.* at 369. Thus, a § 1983 claim cannot be based on the witness's preparation for trial (by, for instance, sharing his or her planned testimony with the prosecutor) because

> [i]n the vast majority of cases involving a claim against a . . . witness, the witness and the prosecutor conducting the investigation engage in preparatory activity, such as a preliminary discussion in which the witness relates the substance of his intended testimony. We decline to endorse a rule of absolute immunity that is so easily frustrated.

*Id.* at 369-70.[4]

Plaintiffs do not dispute that Ward cannot be found liable based on his testimony at trial – which means they do not dispute Defendants' argument that the claim that survived the Court's summary judgment ruling is barred by absolute immunity. Instead, they rely on a different theory, arguing that a witness cannot "fabricate evidence at will, *use that fabricated evidence to help secure a conviction,* and then be immune from suit." (Doc. 252, p. 4 (emphasis supplied).) They explain that they "do not seek to hold Ward liable for his false testimony. Rather, they seek to

---

[4] Courts generally agree that in light of *Rehberg*'s directive that absolute immunity extends to "any § 1983 claim based on the witness' testimony," *Rehberg,* 566 U.S. at 369, a plaintiff's claim is barred by that immunity unless the claim can be made without reference to that testimony. *E.g., Montoya v. Vigil,* 898 F.3d 1056, 1069-71 (10th Cir. 2018); *Sanders v. Jones,* 845 F.3d 721, 731 (6th Cir. 2017), *cert. granted and judgment vacated on other grounds,* 138 S. Ct. 649 (2018); *Coggins v. Buonora*, 776 F.3d 108, 113 (2d Cir.), *cert. denied,* 135 S. Ct. 2335 (2015); *see also Mastrioianni v. Bowers,* 173 F.3d 1363, 1367 (11th Cir. 1999) (pre-*Rehberg* decision).

7

hold him liable for fabricating evidence well before the trials, and witnesses do not immunize earlier wrongful conduct by testifying about that conduct at trial." (Doc. 252, p. 2; *see also* Doc. 252, p. 7.) The Court generally agrees with Plaintiffs' analysis of the law but does not agree that they have identified any fabricated evidence that was used at trial separate and apart from Ward's testimony.

Plaintiffs' claim depends on demonstrating not only that evidence was fabricated, but that the fabricated evidence was used at trial. If fabricated evidence was not used at trial, it could not have been used to procure Michael's conviction. "False evidence . . . only violates a criminal defendants' due process rights if it is used to deprive the defendant of [his] liberty in some way." *Winslow v. Smith,* 696 F.3d 716, 735 (8th Cir. 2012). "'[I]f an officer . . . fabricates evidence and puts that fabricated evidence in a drawer, making no further use of it, then the officer has not violated due process; the action did not cause an infringement of anyone's liberty interest.'" *Id.* (quoting *Whitlock v. Brueggemann,* 682 F.3d 567, 582 (7th Cir. 2012), *cert. denied,* 568 U.S. 1143 (2013)). Here, Plaintiffs refer generally to Ward's pretrial "reports;" while these reports are not specified, the only possible reports are inadequate to support Plaintiff's claims.

Ward orally reported to King that he observed a torch in Michael's truck. King then inserted Ward's observation in the probable cause statement supporting Michael's arrest and the criminal charges, but (as discussed above) the Court already held that those statements did not violate Michael's rights because there was probable cause to arrest and charge Michael even without Ward's report. More importantly for purposes of the present discussion, the probable cause statements were not admitted at trial, so the probable cause statements could not have played a role in the jury's decision to convict Michael. Similarly, there is no indication that King testified about Ward's observation of the torch. And, while Ward may have told the prosecutor about his

8

observation, this would have been part of the customary pretrial planning that *Rehberg* held would not support a § 1983 claim. *Rehberg,* 566 U.S. at 369-70.

In insisting that they are not relying on Ward's trial testimony about the torch but instead are relying on his pretrial reports, Plaintiffs rely heavily on the Seventh Circuit's decision in *Avery v. City of Milwauckee,* 847 F.3d 433 (7th Cir.), *cert. denied,* 137 S. Ct. 2249 (2017). However, that case is distinguishable and demonstrates the flaw in Plaintiffs' theory. In that case, the plaintiff "alleged that Milwaukee detectives concocted a fake confession and induced three jailhouse informants to falsely incriminate him – evidence that was ultimately used to convict him." *Avery,* 847 F.3d at 435. A verdict for the plaintiff was vacated by the trial court for several reasons, including because of the absolute immunity enjoyed by the defendants for their testimony. In reinstating the verdict, the Seventh Circuit noted that it had "consistently held that a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of his liberty in some way." *Id.* at 439 (cleaned up). It rejected the argument that officers were entitled to absolute immunity because the claim was not based on the detectives' testimony. "[T]he detectives testified about Avery's 'confession' and authenticated their false reports memorializing it; the reports were then introduced into the trial record." *Id.* at 441. This is the fact that differentiates *Avery* from the case at bar: in *Avery* there was false evidence admitted at trial *other than* the detectives' testimony; here, there was no false evidence about the torch admitted at Michael's trial apart from Ward's testimony. The Seventh Circuit noted this distinction when it explained that "[t]he detectives are liable under § 1983 for [fabricating the reports] *even though their trial testimony, standing alone would not subject them to damages liability.*" *Id.* at 443 (emphasis supplied).[5]

---

[5] The fact that there was no allegedly fabricated evidence (apart from Ward's testimony) admitted at trial also differentiates the other cases cited by Plaintiffs. *E.g., Livers v. Schenck,* 700 F.3d 340, 349, 354 (8th Cir. 2012) (law

9

The Court agrees with *Avery* that "[i]f an officer who fabricates evidence can immunize himself from liability by authenticating falsified documentary or physical evidence and then repeating the false 'facts' in his trial testimony, wrongful-conviction claims premised on evidence fabrication would be a dead letter." *Avery,* 847 F.3d at 441. But this only means that an officer who fabricates evidence cannot insulate him/herself from liability by testifying if the evidence is also introduced in another manner. As *Avery* points out, the testimony cannot form the basis for the officer's liability – liability must be predicated on fabricated evidence used at trial *other than* the officer's own testimony. Here, Plaintiffs identify no such evidence. Therefore, Ward is entitled to summary judgment on the § 1983 claim.[6]

### B. Plaintiffs' State Claims

The Court granted summary judgment with respect to all tort claims except for the claims of malicious prosecution and intentional infliction of emotional distress, ("IIED"). However, these claims cannot be based on Ward's testimony at trial. "Missouri law provides 'that statements made during proceedings of a judicial or quasi-judicial body are absolutely privileged if they are relevant to the issues before the body.'" *Wunsch v. Sun Life Assur. Co. of Canada,* 92 S.W.3d 146, 156 (Mo. Ct. App. 2002) (quoting *Li v. Metro. Life Ins. Co.*, 955 S.W.2d 799, 803 (Mo. Ct. App. 1997) and citing *Henry v. Halliburton,* 690 S.W.2d 775, 780 (Mo. 1985) (en banc)). "Statements that are absolutely privileged are not actionable as a matter of law." *Riley v. Riley*, 340 S.W.3d 334, 338 (Mo. Ct. App. 2011). Privileged statements cannot even be used in a separate proceeding in

---

enforcement officer allegedly planted blood at scene); *Winslow v. Smith,* 696 F.3d 716, 732 (8th Cir. 2012) (law enforcement officers allegedly "coached witnesses into providing false testimony"); *Whitlock v. Brueggemann,* 682 F.3d 567 (7th Cir. 2012), cert. denied, 568 U.S. 1143 (2013) (officers allegedly coerced and otherwise procured false testimony from witnesses who testified at trial).

[6] Oregon County argues that it cannot be liable absent an underlying constitutional violation by Ward. (Doc. 243, p. 7 n.6.) Plaintiffs do not respond to this contention and the law supports Oregon County's argument. *E.g., Cook v. City of Bella Villa,* 582 F.3d 840, 853 (8th Cir. 2009) ("Absent a constitutional violation, there can be no municipal liability.") Therefore, the Court also grants summary judgment to Oregon County.

order to prove malice. *E.g.*, *McGinnis v. Phillips,* 27 S.W.2d 467, 468-69 (Mo. Ct. App. 1930). This privilege is supported by long-standing public policies designed to insure participation in judicial and quasi-judicial proceedings; as far back as 1890, the Missouri Supreme Court observed that "utterances made in such proceedings are protected by a shield of absolute privilege, interposed from time immemorial by the rules of the common law, to secure the free and fearless conduct of such proceedings." *Hyde v. McCabe*, 13 S.W. 875 (Mo. 1890); *see also Jones v. Brownlee*, 61 S.W. 795 (Mo. 1901). More recently, the Missouri Supreme Court explained that "[t]he primary rationale supporting witness immunity is twofold. First, witnesses may be reluctant to testify if they are subject to a retaliatory suit by an aggrieved party. Second, witnesses may be inclined to shade their testimony in fear of a retaliatory suit." *Murphy v. A.A. Mathews*, 841 S.W.2d 671, 674 (Mo. 1992) (en banc). And, significantly, Plaintiffs concede that they "do not seek to hold Ward liable for his trial testimony." (Doc. 252, p. 10.) Plaintiffs argue that their claims can proceed based on Ward's fabrication of the report prior to trial. The Court disagrees.

"To state a claim for malicious prosecution, the plaintiff must plead and prove six elements: (1) commencement of an earlier suit against plaintiff; (2) instigation of the suit by defendant; (3) termination of the suit in plaintiff's favor; (4) lack of probable cause for the suit; (5) malice by defendant in instituting the suit; and (6) damage to plaintiff resulting from the suit." *Edwards v. Gerstein,* 237 S.W.3d 580, 582-83 (Mo. 2007) (en banc). Given the Court's conclusion that the Record demonstrates Michael would have been arrested and charged even without Ward's report, Michael cannot prove damage (as required by the sixth element). That same conclusion demonstrates that Michael cannot prove "lack of probable cause for the suit," given that the "suit" in question is the criminal prosecution. Therefore, Ward is entitled to summary judgment on Plaintiffs' claim of malicious prosecution based on his pretrial statement about the torch.

11

Ward is also entitled to summary judgment on the IIED claim based on his pretrial statement about the torch. An IIED claim requires a plaintiff to show that: "1) the defendant's conduct was extreme and outrageous, 2) the defendant acted in an intentional or reckless manner, and 3) those acts caused plaintiff severe emotional distress resulting in bodily harm." *Balke v. Ream,* 33 S.W.3d 589, 595 (Mo. Ct. App. 2000); *see also Thomas v. Special Olympics Missouri, Inc.,* 31 S.W.3d 442, 446 (Mo. Ct. App. 2000). However, the sole purpose for the defendant's conduct must have been to cause emotional distress. *E.g., Gibson v. Brewer,* 952 S.W.2d 239, 249 (Mo. 1997) (en banc); *K.G. v. R.T.R.,* 918 S.W.2d 795, 799-800 (Mo. 1996) (en banc). The Record demonstrates that Ward had several purposes for his actions; the Record does not demonstrate that his "sole purpose in [his] conduct was to invade [Michael's] interest in freedom from emotional distress." *Gibson,* 952 S.W.2d at 249. In addition, probable cause to arrest and charge Michael existed independent of Ward's report, so Ward's report did not cause any emotional distress that Michael suffered. Accordingly, Ward is entitled to summary judgment on the IIED claim.[7]

### III. CONCLUSION

Plaintiffs' Motion to Strike is denied. For the reasons stated above, Tim Ward and Oregon County are granted summary judgment on the remaining claims.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
Date: January 14, 2020    UNITED STATES DISTRICT COURT

---

[7] With summary judgment granted to Defendants on all of Michael's claims, Defendants are also entitled to summary judgment on Sara's claim for loss of consortium.